This action has a long procedural history, a portion of which was set forth by this court as a part of a previous appeal.See Point Clear Landing Ass'n, Inc. v. Point Clear Landing,Inc., 864 So.2d 369 (Ala.Civ.App. 2003). In Point ClearLanding Association, Inc. v. Point Clear Landing, Inc.,supra, this court set forth the procedural history of this action as follows:
 "On June 13, 1995, Point Clear Landing, Inc. (`PCL'), filed an appeal in the Baldwin Circuit Court seeking a review of the decision of the Baldwin County Board of Adjustment denying PCL's request for a variance to construct single-family housing on its property. PCL also named Baldwin County as a party in its appeal (those two parties are hereinafter referred to collectively as `the Board'). In the materials filed in the trial court, PCL alleged that it owned certain real property (`the subject property') located adjacent to Point Clear Landing Condominiums. PCL explained that it had originally intended to construct condominiums on the subject property but it had later elected to attempt to construct single-family dwellings on the property. PCL acknowledged in its filing that the construction of single-family dwellings on the subject property would conflict with the existing zoning ordinances.
 "On September 13, 1995, Point Clear Landing Association, Inc. (`the Association'), filed a motion to intervene in the circuit court. In that motion, the Association argued in favor of the Board's decision, citing, among other things, the language in the deed to the subject property that restricted the development of the property to its use for condominiums similar to the Point Clear Landing Condominiums. The Association also asserted that it had adversely possessed the property since July 1983, and it sought a judgment declaring, among other things, that PCL did not have a right to develop the subject property.
 ". . . PCL and the Board later reached an agreement as to PCL's claims regarding the variance, and the trial court dismissed the Board [from] the action.
 "PCL and the Association each amended its filings to assert claims *Page 674 
against the other. In summary, PCL sought to enjoin the Association from renting boat slips on the subject property; sought damages in the amount of any rental fees from those boat slips; and sought damages on a claim alleging conversion. The Association sought the reformation of the description contained in the deed to the subject property.
 "On June 28, 2002, PCL [asserted in a separate action] claims against the Association, stating that the Association had purchased the subject property at a tax sale in December 1998, and asserting its intention to redeem the subject property pursuant to § 40-10-82, Ala. Code 1975. The Association answered, contending that PCL did not have statutory authority to redeem the subject property, but in the event the trial court ruled adversely on that issue, the Association was entitled, pursuant to § 40-10-83, Ala. Code 1975, to an award of the redemption price plus a reasonable attorney fee.[1]
 "On October 8, 2002, the trial court entered an order granting PCL the right to redeem the subject property and awarding the Association certain amounts as the redemption price for the property. The trial court certified its October 8, 2002, order as final, pursuant to Rule 54(b), Ala. R. Civ. P."
864 So.2d at 369-70.
In Point Clear Landing Association Inc. v. Point ClearLanding, Inc., supra, the Association appealed the October 8, 2002, order granting PCL the right to redeem the subject property. This court, ex mero motu, concluded that the October 8, 2002, order was not appropriate for a certification of finality pursuant to Rule 54(b), Ala. R. Civ. P.864 So.2d at 371. Therefore, this court dismissed the appeal on the basis that it had been taken from a nonfinal judgment. Id.
The record indicates that following this court's decision inPoint Clear Landing Association, Inc. v. Point ClearLanding, Inc., supra, PCL did redeem the subject property and that no further challenge to that redemption has been asserted. In October 2002, the Association moved for a partial summary judgment pertaining to its alleged adverse possession of certain boat slips apparently located on the subject property; it does not appear that the trial court ruled on that motion. The trial court conducted a trial on the merits on October 27, 2003. However, no further action was taken in the case for more than a year.
On March 22, 2005, the trial court sent a notice via e-mail to the parties' attorneys advising them of its intended resolution of the pending issues. In that e-mail notice, the trial court requested that the attorneys for the Association and for PCL submit for its consideration proposed judgments setting forth the terms of the ruling as discussed in the e-mail notice.
On September 15, 2005, Alabama Development and Construction Consultants ("ADCC") filed a motion asserting that it had purchased PCL's interest in the subject property and asking to be substituted as a party in the action. On September 22, 2005, the trial court granted that motion and ordered that ADCC be substituted as the "plaintiff/counterclaim defendant" in this action.
On January 23, 2006, the trial court entered a final judgment in this matter. In that judgment the trial court, among other things, declared that the bulkhead *Page 675 
and boardwalks situated on the boundary of the subject property belong to the Association. The trial court awarded ADCC an easement along that part of the bulkhead and boardwalk that are immediately adjacent to the subject property "together with such riparian rights pursuant to § 33-7-50, Ala. Code 1975." The trial court also denied the claims seeking reformation of certain restrictive covenants pertaining to the subject property and property owned by the Association.
The Association filed a postjudgment motion in which it, among other things, objected to the trial court's reference in its judgment to any riparian rights ADCC might have with regard to the subject property. After the trial court denied the Association's postjudgment motion, the Association timely appealed.
During the pendency of the appeal in this court, Jessie Kaylor filed a motion asserting that he had purchased the subject property from ADCC and requesting that he be substituted as the appellee in this appeal. This court granted that motion, and, accordingly, we will hereinafter refer to the appellee as "Kaylor."
The Association first argues that the trial court erred in referring in its January 23, 2006, judgment to any riparian rights Kaylor might have with regard to the subject property. "Riparian rights, which entitle the owner to construct waterfront improvements, belong to the owner of the fee in the riparian lands abutting the water." City of Orange Beach v.Benjamin, 821 So.2d 193, 195 (Ala. 2001). Our supreme court has explained:
 "The rights of riparian owners are stated in §§ 33-7-50 through 33-7-54, Ala. Code 1975. Section 33-7-50 states:
 "`The owner of riparian lands upon navigable waters in the State of Alabama may install in front of their respective riparian lands wharves, docks, warehouses, sheds, tipples, chutes, elevators, conveyors and the like for receiving, discharging, storing, protecting, transferring, loading and unloading freight and commodities of commerce to and from vessels and carriers, and may use their riparian lands in connection therewith and dredge out and deepen the approaches thereto, and may charge and collect reasonable tolls for the use thereof. All such structures are to be subject to such lines and limitations as may at the time of making such improvements be laid or placed by any authority of the United States, or of the State of Alabama, who may have authority to control harbor and pier lines.'
 "This section governs building rights not only on riparian lands and the overlying waters but also on the lands and overlying waters, including navigable waters, in front of riparian lands."
Ex parte Cove Props., Inc., 796 So.2d 331, 333
(Ala. 2000) (emphasis omitted).
The Association argues that neither of Kaylor's predecessors in interest ever asserted a claim to riparian rights until ADCC submitted its proposed judgment to the trial court. The Association also contends that the issue of the existence of any riparian rights was not litigated during the trial on the merits. "Where an issue is not raised in a pleading but it is tried by the express or implied consent of the parties, the pleadings may be treated as amended so as to conform to the evidence. Rule 15(b), Ala. R. Civ. P." J.A.P. v.L.W.A., 910 So.2d 115, 118 (Ala.Civ.App. 2004). However,
 "[w]hen a party contends that an issue was tried by express or implied consent and the evidence on that issue is also relevant to the issue expressly litigated, *Page 676 
there is nothing to indicate that a new-issue was raised at trial, and the pleadings are not deemed amended under Rule 15(b). Wright Miller, Federal Practice Procedure, Civil, § 1493 (1971)."
McCollum v. Reeves, 521 So.2d 13, 17 (Ala. 1987).
This court's review of the pleadings and motions filed in this action indicates that at no time did any party make any reference to or assert a claim asking for a declaration of its riparian rights with regard to the subject property (or to other property for which ownership was not an issue).
Kaylor responds to the Association's argument that the issue of riparian rights was not raised or tried before the trial court by asserting, among other things, that the issue of the navigability of the waters that the subject property borders was tried before the trial court. Thus, Kaylor apparently contends, based on the mention of the term "navigable waters" in §33-7-50, Ala. Code 1975, that the issue of navigability of the waters bordering the subject property was sufficient to place the Association on notice of the claim asserted by his predecessor in interest regarding riparian rights. Kaylor points out that while questioning a fact witness during the trial, the Association's attorney asked one question regarding whether the water bordering the subject property was a navigable waterway.[2] Kaylor also points to language in deeds to the subject property that mention "riparian rights" or the phrase "navigable waters"; significantly, Kaylor's predecessors in interest did not reference that language during any part of the proceedings below. Kaylor also cites the evidence pertaining to the Association's rental of certain boat slips as evidence of the navigability of the waters bordering the subject property;[3] Kaylor asserts that that evidence constitutes an admission or concession by the Association that the water bordering the subject property is a navigable waterway.
Assuming any of the aforementioned arguments to be correct, however, our review of the trial transcript reveals that there was no mention of riparian rights during the trial on the merits by Kaylor's predecessor in interest. The testimony and evidence to which Kaylor refers pertaining to the issue of the navigability of the waters bordering the subject property was relevant to the issues being expressly tried before the trial court. Given the relevance of that evidence to issues being expressly tried before the trial court, we cannot agree that the new or separate issue of riparian rights was raised or tried before the trial court. See McCollum v. Reeves,521 So.2d at 17. Therefore, we must reverse those parts of the trial court's January 23, 2006, judgment that *Page 677 
refer to riparian rights with regard to the subject property.
The Association also contends on appeal that the trial court erred "as a matter of law" in failing to award it legal title to two areas of the subject property located near one of the condominium buildings ("Building C"). One of the areas of the subject property at issue is located between Building C and the docks or boardwalks in front of that building, and the other area is located between Building C and the docks or boardwalks on one side of that building. The Association contends that the award of those areas of property is necessary for its members to have convenient access to the docks and boat slips assigned to one of the condominium buildings in the Association. In support of its argument that the trial court should have awarded it title to those two areas of the subject property, the Association cites certain testimony and documentary evidence submitted at the trial and maintains that the trial court should have awarded it that property either pursuant to the interpretation or construction of certain documents pertaining to the condominiums or pursuant to the theory of adverse possession. The trial court made no factual findings with regard to the Association's claim seeking title to those areas of property.
Kaylor has filed in this court a "motion to strike" that part of the Association's brief pertaining to the two areas of the subject property. Kaylor contends that the Association failed to properly preserve that argument for this court's consideration. In support of his argument, Kaylor cites New Properties,L.L.C. v. Stewart, 905 So.2d 797 (Ala. 2004). In that case, our supreme court held that "in a nonjury case in which the trial court makes no specific findings of fact, a party must move for a new trial or otherwise properly raise before the trial court the question relating to the sufficiency or weight of the evidence in order to preserve that question for appellate review." 905 So.2d at 801-02. Kaylor argues that the Association's argument pertaining to the failure of the trial court to award it title to the two areas of property amounts to a challenge of the sufficiency of the evidence considered by the trial court. However, as Kaylor points out, the Association did not assert a challenge with regard to the ownership of the two areas of property before the trial court in a postjudgment motion.
In response to Kaylor's argument, the Association contends that it was not required to file a postjudgment motion in the trial court in order to preserve its argument on this issue. The Association maintains that its argument is not based on the sufficiency of the evidence supporting the trial court's judgment, but rather upon its contention that the trial court erred as a matter of law based upon undisputed facts. We find that argument to be unpersuasive, given the facts of this case and the arguments asserted in the Association's brief on appeal.
The document conveying and dedicating Building C to the Association limits the property conveyed to the "footprint" of Building C, or the land which lies directly under the building. In asking this court to hold that the deed conveying Building C to the Association "should" have conveyed the additional areas of property at issue, the Association speculates that the intent of PCL in drafting that document was to convey those additional areas adjacent to Building C. In addition, the Association argued that the evidence was undisputed that it had adversely possessed those areas of the subject property. The Association directs this court only to the testimony of Gerald Drennan, the president of PCL, who testified that it was the intent of PCL that "the dock and the slips and this gazebo *Page 678 
surrounding Building C" be dedicated to the Association as part of the common areas available to the Association. However, Howard Donovan, the attorney hired to assist with drafting the legal documents for developing the condominium project, explained that only the footprint of Building C was conveyed in order for PCL to maintain flexibility with regard to the development of the condominium project. Donovan also answered in the affirmative a question from the trial court about whether PCL was required to exercise a certain option in order for the common elements such as the areas of property at issue to be merged into the Association; that option was not exercised and it expired.
The foregoing evidence demonstrates that in order to resolve the Association's argument that the trial court erred in failing to award it the two areas of the subject property at issue, this court would have to examine the sufficiency of the evidence presented to the trial court. However, as pointed out by Kaylor, in order to preserve its arguments before this court, the Association was required to have raised a challenge as to the sufficiency of the evidence pertaining to those claims before the trial court. New Props., L.L.C. v. Stewart, supra. The Association did not do so. Accordingly, we cannot say that the Association preserved for appellate review its arguments that it should have been awarded the additional areas of the subject property. Pursuant to the precedent of NewProperties, L.L.C. v. Stewart, supra, we affirm the trial court's judgment as to this issue; we deny Kaylor's motion to strike that portion of the Association's brief pertaining to this issue. See New Props., L.L.C. v. Stewart,905 So.2d at 802 (affirming the judgment when the appellant failed to properly preserve the issue for appellate review).
APPELLEE'S MOTION TO STRIKE IS DENIED; AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
CRAWLEY, P.J., and PITTMAN and BRYAN, JJ., concur.
MURDOCK, J., concurs in the result, without writing.
[1] On June 26, 2006, the trial court ordered that the redemption action be consolidated with the original action initiated by PCL.
[2] That question reads as follows:
 "Q. [ASSOCIATION ATTORNEY]: And you know as a real estate expert dealing from time to time with waterfront development that a boat could come in here and meander on through here, fish, and, you know, stop and swim, that all of this is navigable waterway, isn't it?"
 A. Right."
[3] We note that in addition to the evidence described in the body of this opinion, Kaylor cites certain testimony from a deposition of a witness who later testified at trial. That deposition was submitted by the Board in support of its motion for a summary judgment on PCL's challenge to the Board's denial of its request for a variance. Clearly, the issue of the navigability or, arguably, any riparian rights that Kaylor's predecessors in interest might have in the subject property were not at issue between those parties or in that filing. We conclude that that testimony is not sufficient to support a claim for riparian rights.